Argued January 19; peremptory writ of mandamus allowed
February 20, 1934

# WARM SPRINGS IRRIGATION DISTRICT *v.* HOLMAN

(29 P. (2d) 825)

*Ed. R. Coulter,* of Weiser, Idaho, and *Porter J. Neff,* of Medford (F. P. Farrell, of Medford, and Otto J. Frohnmayer, on the brief), for plaintiff and petitioner.

*Willis S. Moore,* Assistant Attorney General (Isaac H. Van Winkle, Attorney General, and Ralph E. Moody, Assistant Attorney General, on the brief), for defendant.

BAILEY, J. This is an original proceeding in mandamus instituted by the Warm Springs Irrigation District as petitioner, against Rufus Holman as treasurer of the state of Oregon, to require him as such treasurer to cancel, pursuant to chapter 242, Oregon Laws 1933, the interest certificates of indebtedness issued and delivered by the petitioner to the state of Oregon in accordance with article XI-b of the constitution of the state of Oregon, or to show cause for not so doing.

Article XI-b of the constitution was adopted by the people of the state of Oregon at a special election held June 3, 1919, and was repealed at the general election of 1930.

Section 1 of article XI-b read as follows:

"Notwithstanding the limitations contained in section 7 of article XI of the constitution, the credit of the state may be loaned and indebtedness incurred to an amount not exceeding two (2) per cent of the assessed valuation of all the property in the state, for the purpose of providing funds for the payment by the state of interest for a period not exceeding five (5) years on bonds heretofore, or hereafter issued by irrigation and drainage districts, organized, or. to be organized, under the laws of the state of Oregon."

Other sections of said article provided that whenever the board of directors of any irrigation or reclamation district, then or thereafter organized under the laws of the state of Oregon, should deem it to the best interest of such district to enter into an agreement with the state of Oregon for payment by the state of interest to accrue in any or all of the first five years after the issuance of any bonds which said district had theretofore issued or might thereafter issue, the board of directors should give notice of an election and submit to the voters of the district the

question of whether or not the district should enter into such an agreement with the state of Oregon. In event the vote of the district should be favorable to such an agreement, the machinery for procuring financial assistance from the state was set up in further provisions of the amendment. And in the event that the state commission created by the amendment should find certain facts to exist, it was authorized to enter into an agreement on behalf of the state with the district to pay the interest, on bonds of such district for a period of not to exceed five years.

Sections 7, 8 and 9, of article XI-b are material to the question now before us, and they provided as follows:

"§ 7. Whenever the commission, after complete investigation of the affairs of the district, shall find that it is for the best interest of the district and of the state of Oregon to enter into an agreement for the payment of interest by the state, and that said district is entitled to the benefits hereof, said commission may enter into an agreement with said district providing for the payment of any or all of the interest falling due on the bonds of the district for a period not greater than the first five years, which agreement shall provide that any and all moneys used in the payment of such interest, together with interest thereon at five per cent per annum, shall be evidenced by 'interest certificates of indebtedness' of the district properly executed by its duly authorized officers.

"§ 8. Each 'interest certificate of indebtedness' so executed shall be issued and dated ninety days prior to the day and year of the date of each interest payment for which said 'certificate of indebtedness' is issued by the district, and shall fall due and be paid in full with interest as aforesaid by the district six months subsequent to the due date of the last maturing serial bond of the district on which the state has agreed to pay interest; or after the district shall have issued 'interest certificates of indebtedness', each cer-

tificate shall fall due and be paid in full with interest as aforesaid six months subsequent to the due date of the last preceding 'interest certificate of indebtedness' which shall have been issued by such district.

"§ 9. Whenever an agreement shall be entered into by and between the state and a district for the payment of such interest by the state, excepting when the directors of any such district shall have notified the state treasurer on or before ninety days prior to any interest due date that it will not avail itself of said moneys for the payment of any single instalment of interest under its agreement with the state, the district shall, ninety days before the due date of said interest payment, forward an 'interest certificate of indebtedness' for the amount of interest to fall due on said due date to the treasurer of the state of Oregon, and said treasurer of the state of Oregon shall sixty days prior to such interest due date call for bids for bonds of the state of Oregon which shall be general obligations of the state and shall be known as 'district interest bonds', series —.''

The alternative writ of mandamus avers that the Warm Springs Irrigation District, pursuant to article XI-b of the constitution, issued and sold an aggregate of $1,550,000 of its bonds; that the state agreed to, and did, during the first five years after the issuance of said bonds, pay interest thereon in the total amount of $414,000; and that pursuant to said article XI-b the petitioner herein issued and delivered to the state of Oregon interest certificates of indebtedness in the sum of $414,000, which certificates are due and payable to the state of Oregon semi-annually on and from January 1, 1948, to and including January 1, 1953.

The alternative writ further sets forth that said district after the execution and delivery of the interest certificates of indebtedness to the state defaulted in the payment of interest and principal on its bonds and became unable to pay and discharge the indebtedness

evidenced by the bonds issued by it and said interest certificates of indebtedness; that thereafter the petitioner "entered into an agreement with all of its creditors, other than the state of Oregon, by virtue of which the annual payments required from your petitioner for the payment of the indebtedness of said district other than said certificates of indebtedness were reduced to an amount which was within the ability of such district to pay"; and that pursuant to such agreement its creditors, other than the state of Oregon, had accepted, in lieu of the bonds of the district held by them, "refunding bonds of such district which were satisfactory to said state reclamation commission in amounts, maturities and interest rates, and thereupon all the outstanding bonds of said irrigation district and all other evidences of indebtedness of your petitioner other than said certificates of indebtedness were by the holders thereof surrendered and canceled."

It is further stated in the writ that the petitioner had filed with the state reclamation commission of Oregon "evidence satisfactory to said commission" of the facts hereinbefore recited; that thereupon the said commission after considering said evidence had duly found that the agreement which had been entered into "would and did reduce such district's obligations to an amount which the said state reclamation commission found within the ability of such district to pay" and "further found from said evidence that the amount required to be paid upon the obligations of said district" other than those due the state of Oregon, by such agreement between the district and its creditors, "were as great as the ability of said district to pay"; and that the commission thereupon made and filed its report with the defendant, authorizing and directing

him as state treasurer to cancel in whole said certificates of indebtedness executed by said district.

The writ further states that notwithstanding this report and order the defendant had refused and still refuses to cancel said certificates of indebtedness.

To this alternative writ the defendant filed a demurrer upon the ground that the writ fails to state facts sufficient to constitute a cause of action or to entitle the petitioner to the relief demanded. It is the contention of the defendant that chapter 242, Oregon Laws, 1933, upon which the petitioner bases its right to relief, is invalid as violative of §§ 7 and 8 of article XI of the state constitution.

Section 1 of chapter 242, Oregon Laws, 1933, authorizes and directs the state reclamation commission to release any irrigation district in the state of Oregon "from the payment of the whole or any part of the certificates of indebtedness" theretofore executed to the state of Oregon by such irrigation district pursuant to the provisions of article XI-b, in the event that an agreement shall be made, prior to any such release, between the district and its creditors which "will reduce the annual payments required from such district for the payment of the indebtedness of such district to an amount which the said reclamation commission finds to be within the ability of such district to pay".

Section 2 of the act of 1933 provides that whenever there is filed with the reclamation commission evidence satisfactory to it "that the creditors of the irrigation district, other than the state of Oregon", have entered into an agreement which will reduce such district's obligations to an amount which the commission finds is "within the ability of such district to pay, or have accepted in lieu of the evidence of indebtedness

of such district held by such creditors" refunding bonds satisfactory to the commission "in amount, maturities and interest rates", the said commission shall file with the state treasurer of Oregon a report "and shall authorize and direct the said state treasurer to, and thereupon he shall, cancel in whole or in part the certificates of indebtedness executed by said district under the provisions of said article XI-b, as said state reclamation commission shall direct".

In determining whether or not chapter 242, Oregon Laws, 1933, is constitutional it will be helpful to consider the objects and purposes sought to be accomplished in amending our state constitution in 1919 by adding thereto article XI-b. At that time most of the irrigation and reclamation districts of the state were meeting with financial difficulties in developing their projects. Bonds could not be disposed of except at a high rate of interest and a greatly discounted price. In the work on the projects much time was consumed and, in many instances, after completion of the work settlers had to be procured and the land put under cultivation before revenue with which to pay the interest on the bonds could be obtained. It was thought that if these districts could weather the storm for the first five years after the sale of their bonds, no real difficulty would thereafter be encountered in meeting the payments of interest and installments of principal on their bonded indebtedness. For that reason the state was, by article XI-b, permitted to loan its credit and incur indebtedness in an amount not exceeding 2 per cent of the assessed valuation of all the property in the state, for the purpose of providing funds for the payment by the state of interest, for a period not exceeding five years, on irrigation bonds theretofore or thereafter issued. This constitutional amendment was

self-executing and provided within itself the machinery to carry it into effect.

Before the commission created by the amendment could enter into a contract with an irrigation or reclamation district for the payment of interest, it was necessary for the commission to find that it was "for the best interest of the district applying for the benefit of the provisions hereof, and the state of Oregon, that the state of Oregon" should pay "interest on such bonds for the period covered by the application" of the district.

The interest certificates of indebtedness issued and delivered by the irrigation districts to the state of Oregon for the interest advanced and paid by the state were due and payable by the respective districts "six months subsequent to the due date of the last maturing serial bond of the district on which the state" agreed to pay interest. Or, in the event that more than one interest certificate of indebtedness was issued by the district, the first of such certificates was to be due and payable six months after the due date of the last maturing serial bond of the district and each subsequent interest certificate of indebtedness was to be payable six months after the due date of the preceding certificate of indebtedness. In other words, it was the intention of the people of the state of Oregon at the time this constitutional amendment was adopted that the indebedness due from an irrigation or reclamation district to the state under this amendment should not be payable until after the bonds then outstanding had matured. Although the organic law did not provide that these interest certificates of indebtedness should not be paid until after all the bonds then outstanding had in fact been paid, it was undoubtedly intended that the outstanding bonds should

and would in fact be paid before the due date of these certificates.

Nothing in the law or in the constitution of this state gave to the state for the money thus loaned or advanced by it any lien, by subrogation to the rights of bondholders, or otherwise, against the property of irrigation and reclamation districts. Nor was the state given a right prior to that of unsecured creditors of the districts.

By § 48-504, Oregon Code 1930, which was in effect at the time article XI-b was added to our constitution, it is provided that bonds issued by irrigation districts and the interest thereon shall be paid by revenues derived from annual assessments upon the land in the district, and that all lands in the district shall be and remain liable to be assessed for such payments.

The above section further provides that all the property of the district, "including irrigation and other works", shall be liable for the district's bonded indebtedness and in case the same is not paid, the holder of the bonds may, following default in the payment of interest or principal, "upon the order of the circuit court, take possession of the irrigation and other works of the district and operate the same until the amount in default shall have been fully paid". By this section, any assessment upon the land for the payment of the indebtedness against the district is declared to be a lien against the property assessed, and the lien for all payments due or to become due upon any contract with the United States or for the payment of principal or interest on bonds deposited with the United States is declared "a preferred lien to any assessments for bonds issued subsequent to the date of such contract or the issuance of said bonds deposited with the United States". The same section

further provides that "no district assessment lien shall be removed until the assessments are paid with interest and penalties or the property sold for the payment thereof".

The law, however, fails to make the indebtedness represented by the certificates a lien against the property, much less a prior lien as in the case of the United States, and obviously the state, by virtue of its ownership of these certificates, would not, under the law as it now exists, be expected or entitled to have the property assessed for the payment of the certificates until the maturity thereof, at which time the property of the district would be subject to the lien for any unpaid assessments levied to raise revenue to pay the bonded indebtedness of the district. The law does not require the district to create a fund with which to pay the certificates. Such a procedure would be inconsistent with the purpose of the constitutional amendment under discussion, i. e., to lend the state's assistance during what might be termed the infancy of the district and to postpone repayment to the state until the last bond of the district had been paid.

It is therefore apparent that the right of the state, as holder of these interest certificates of indebtedness, is subsequent and inferior to that of the holders of bonds issued by the district the interest on which for a limited period has been guaranteed by the state. The state stands in a position, so far as those bondholders are concerned, somewhat analogous to that of an unsecured claimant. Its situation is less favorable than that of a second mortgagee. It has no greater right against the assets of the district than has any other unsecured creditor. In fact, it is doubtful indeed that the state's rights are even on a parity with those of existing unsecured creditors of the district, inasmuch

as the claims of such creditors may be enforced by causing assessments to be levied against the property in the district before the due date of the certificates held by the state.

There is nothing in the constitution or the statutes which authorizes or permits the state to do anything toward collecting on these certificates at the present time or toward conserving the assets of the district until the certificates mature. Stated differently, if the district defaults in its bonds, and the lands therein are sold for unpaid assessments, the proceeds of such sale would be applied first on the outstanding bonds.

Like many other ventures, the state's departure from its time-honored inhibition against loaning its credit and assuming indebtedness proved ill-advised and expensive. After article XI-b was adopted bonds of irrigation districts became more attractive to investors and many districts took advantage of state aid. Advances made by the state to pay the interest on these bonds soon mounted into millions of dollars, and there arose so insistent a demand that further loaning of the state's credit in the promotion of irrigation districts cease that article XI-b was in 1930 repealed, thus putting an end to any new interest underwriting on the part of the state. Undoubtedly the principal reason which motivated the electorate to take the action it did in 1930 was the great uncertainty existing as to whether or not the state of Oregon would ever be repaid any considerable amount of the money which it had advanced in aid of irrigation and reclamation districts.

Many of the irrigation districts at the present time are, and for several years past have been, bankrupt, unable to pay the interest, much less the principal, on their bonded indebtedness. Efforts have been made

by the state legislature to provide means by which such districts may, by entering into new agreements with their creditors, reduce the amount of the districts' indebtedness to such an extent that the districts eventually will be able to regain solvency. Creditors in most instances have been entirely willing to cooperate with state officials and others attempting to bring about this much desired relief, knowing full well that the burdens assumed by such districts will, if not materially lessened, finally result in ruin to the districts and a considerable, if not total, loss to the bondholders.

By enacting chapter 242, Oregon Laws, 1933, the legislature attempted to assist in the rehabilitation of many distressed irrigation and reclamation districts. It was, however, the intention of the legislature to authorize the reclamation commission to cancel only so much of the indebtedness of any district to the state as the district was found, by the commission, unable to pay.

■ Every law enacted by the legislature is presumed to be constitutional until declared invalid, and the holders of the bonds issued by the Warm Springs Irrigation District, as well as the district, were warranted in assuming, when they entered into their new agreement, that the commission would carry out the provisions of chapter 242, Oregon Laws, 1933. Without doubt the bonded indebtedness of the district was reduced to an amount within the ability of the district to pay, and the maturities and interest rates on the refunding bonds were agreed to by the interested parties in the belief that the state reclamation commission would, if it found that the district was unable to pay the whole or any part of its indebtedness to the state in addition to the adjusted amount due other

creditors, cancel so much of the state indebtedness as the district could not pay.

The legislature constituted the state reclamation commission a fact-finding body to ascertain the financial condition of such irrigation and reclamation districts as might apply to have their interest certificates of indebtedness to the state canceled. In the event that the commission should find those certificates to be valueless and a feasible refinancing plan to have been agreed upon between the district and its creditors other than the state of Oregon, then the commission was authorized and directed to cancel such certificates or so many thereof as were worthless.

██ There is nothing in the constitution, to our knowledge, which will prohibit the legislature from canceling or authorizing the cancellation of such evidences of indebtedness under the conditions contemplated by chapter 242, Oregon Laws, 1933. Upon the facts as they appear in the alternative writ, the state treasurer should have, pursuant to the direction of the reclamation commission, canceled the certificates of indebtedness here in question.

The demurrer to the alternative writ is overruled and a peremptory writ ordered to be issued.